Present:  Goodwyn, Mims, Powell, Kelsey, and McCullough, JJ., and Russell and Koontz, S.JJ.

JIMMY RAY WEATHERHOLT, JR.

OPINION BY
v.  Record No. 190206                    SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
                                          March 19, 2020
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal we consider whether Jimmy Ray Weatherholt, Jr. was deprived of his right

to counsel during a critical stage of a criminal prosecution in violation of the Sixth Amendment

of the United States Constitution as applied to the states through the Fourteenth Amendment,

thus necessitating the setting aside of his convictions and awarding him a new trial.

BACKGROUND

Because our inquiry will be limited to a specific instance during the pre-trial proceedings,

we will recite only those facts necessary to our resolution of this appeal.  *See*, *e.g.*, *Hood v.*

*Commonwealth*, 280 Va. 526, 530 (2010); *Commonwealth v. Garrett*, 276 Va. 590, 593, 667

(2008).

Following his indictment by the Frederick County Grand Jury on November 10, 2016 for

conspiracy to distribute oxycodone and distribution of oxycodone, third or subsequent offense,

Weatherholt retained Shelly Renee Collette as his defense counsel.  On April 12, 2017, the

Virginia State Bar suspended Collette's license to practice law in the Commonwealth for her

failure to comply with a disciplinary proceeding subpoena.[1]  Upon learning of Collette's

---

[1] The record reflects that Collette's license to practice law had previously been suspended from February 14 to 24, 2017.  Additionally, on September 14, 2017, Collette assented to an indefinite suspension of her license due to impairment and subsequently consented to having her license permanently revoked.  *In the Matter of Shelly Renee Collette*, Record No, 17-000-19062, et al. (Va. State Bar Disciplinary Board March 23, 2018).  Although Weatherholt contended at trial and in the Court of Appeals that Collette's disciplinary record would support a finding that her representation fell below the acceptable standard for effective assistance of counsel, the

suspension, the Commonwealth requested that the circuit court conduct a hearing "to see what Mr. Weatherholt wanted to do about counsel." On April 21, 2017, Weatherholt appeared without counsel and, in response to an inquiry from the court, confirmed that Collette had failed to appear that morning in a neighboring jurisdiction on another matter in which she represented Weatherholt.

The circuit court then engaged Weatherholt in the following colloquy:

THE COURT:  So, Mr. Weatherholt, the matter has been brought to the Court's attention that Ms. Collette, the lawyer, is currently not in good standing with the Bar and your trial is scheduled for jury trial next Thursday[, April 27, 2017].

The Court is further informed that the Clerk had a conversation with Ms. Collette. And, Ms. Collette said to the Clerk that everything is about resolved and if it is not resolved it will be resolved Monday[, April 24, 2017].

I think it is appropriate to inquire of you what your position is in regard to Ms. Collette's representation of you. Currently, she apparently cannot represent you . . . today.

WEATHERHOLT: Well, she has been paid. So, I don't have any more money to hire a lawyer unless you all would appoint me one.

THE COURT: Well, do you wish to go forward on Thursday if Ms. Collette is re-instated?

WEATHERHOLT: Yeah. I mean. She has done been paid to do her job[.]

. . . .

THE COURT: . . .  So, as far as you are concerned, you would like to find out if she is admitted to practice next week and move forward with the trial on Thursday?

WEATHERHOLT: Yeah. I mean, I want to get it over with.

The circuit court indicated that if Collette's license had not been reinstated by the following Tuesday, April 25, 2017, the trial could be continued at that time. Responding to the

_____

Court of Appeals correctly concluded that this issue was not cognizable in a direct appeal, but must be raised through a habeas proceeding. *Weatherholt v. Commonwealth*, Record No. 1797-17-4, slip op. at 5 (December 26, 2018).

2

Commonwealth's concern that Collette's suspension might interfere with other aspects of the proceedings, the court responded, "The Sixth Amendment guarantees the right to counsel. This is the counsel he wants." At the conclusion of the hearing, the court entered an order continuing the matter to April 25, 2017 for a "review of attorney standing."

The record does not indicate that there was any proceeding on April 25, 2017. It appears that the circuit court, having been advised that Collette's license to practice law had been reinstated effective April 21, 2017, simply allowed the matter to proceed.

On April 27, 2017, with Collette present and prepared for trial, the case was called on the circuit court's docket. However, due to "the insufficiency of the number of the jury panel," the matter was continued. At a hearing held the following day, the Commonwealth agreed to waive its request for a jury trial, indicating that Weatherholt had previously indicated that he did not want a jury. The circuit court then inquired whether Weatherholt, who was present with Collette as counsel, still wished to waive his right to a jury trial. Weatherholt agreed to a bench trial, indicating to the court that he had discussed the implications of so doing with Collette. The court continued the case to May 10, 2017.

At the outset of the trial on May 10, 2017, the circuit court conducted a colloquy in which Weatherholt stated that he had discussed the charges against him with Collette, that he had had sufficient time to discuss with her any possible defense he might have to these charges, that the witnesses he needed for trial were present, that Collette had explained to him the mandatory and maximum sentences possible for the offenses, and that he was satisfied with her services. After receiving evidence from the Commonwealth and the defense, the court convicted Weatherholt of both offenses and continued the case for sentencing. On August 27, 2017, the circuit court

sentenced Weatherholt to 30 years' imprisonment on each charge with 15 years suspended and the sentences to run concurrently.

On September 1, 2017, Weatherholt, represented by new counsel, filed a motion to stay the sentencing order, asserting as grounds his intent to seek a new trial based on multiple claims including that he had been improperly denied the right to counsel at the April 21, 2017 hearing. The circuit court entered an order suspending the judgment until November 7, 2017.

On October 13, 2017, Weatherholt filed his motion to set aside the verdict and for a new trial. As relevant to this appeal, Weatherholt alleged that at the hearing held April 21, 2017 he was deprived of his Sixth Amendment right to counsel. Relying on *Maine v. Moulton*, 474 U.S. 159, 170 (1985), Weatherholt contended that to deprive a person of counsel during the period prior to trial "may be more damaging than denial of counsel during the trial itself." Asserting that "the assistance of counsel is shaped by the need for the assistance of counsel," Weatherholt contended that he should have been afforded the assistance of counsel before being required to make a decision about whether to proceed with the scheduled trial without the assistance of his then-suspended counsel. Thus, Weatherholt maintained that the April 21, 2017 hearing constituted a critical stage of the criminal process in which he was improperly denied the assistance of counsel and that the subsequent proceedings were necessarily suspect.

With respect to the claim that he was deprived of the assistance of counsel at a critical stage of the pre-trial proceedings, the Commonwealth asserted that "the entire right to counsel analysis turns on whether there was some deprivation of counsel during a 'critical stage of the proceeding.'" Maintaining that Weatherholt had not made "specific assertions regarding how the [period] of suspension impacted a critical stage of the proceedings," the Commonwealth asserted that there was no basis for setting aside the judgment.

The circuit court conducted a hearing on Weatherholt's motion on November 3, 2017. Following argument by the parties, the court stated that the purpose of the April 21, 2017 hearing "was simply to make sure that Mr. Weatherholt was informed with regard to the situation with his counsel and to inquire of him what he wished to do in terms of counsel at that point. It was clear to the Court that he wanted Ms. Collette to continue as his counsel." Accordingly, the court found "that the [April 21, 2017] hearing was not a critical stage of the proceeding." Consequently, the court entered an order of even date denying the motion to set aside the verdict.

Weatherholt appealed his convictions to the Court of Appeals. The Court of Appeals granted Weatherholt an appeal. As relevant in affirming Weatherholt's convictions, the Court of Appeals observed that while there is no comprehensive definition of what constitutes a critical stage in criminal proceedings, previous instances where a defendant had been found to have been improperly deprived of counsel included during a police lineup, at a preliminary hearing, at a plea hearing, at sentencing, and on appeal. *Weatherholt v. Commonwealth*, Record No. 1797-17-4, slip op. at 4 (December 26, 2018). Noting that at the April 21, 2017 hearing Weatherholt, "after being informed that his counsel's license had been suspended temporarily, specifically chose to proceed with his trial as scheduled if his counsel's suspension was lifted as expected," the Court of Appeals concluded that Weatherholt had not been deprived of counsel at any critical stage of the criminal proceedings and consequently there was "no error with the trial court's decision not to appoint standby counsel" at that hearing to provide him with advice with regard to his decision to have Collette continue as his attorney. *Id.* at 5. Accordingly, the Court of Appeals affirmed Weatherholt's convictions.

5

DISCUSSION

Weatherholt noted an appeal from the judgment of the Court of Appeals to this Court. We granted him an appeal limited to the following assignment of error:

> The circuit court violated Mr. Weatherholt's right to counsel by having him appear without counsel during the pendency of his criminal charges and failing to advise Mr. Weatherholt as to the nature of his counsel's failure to appear.

For purposes of our resolution of this appeal, Weatherholt has essentially asserted that the April 21, 2017 hearing constituted a critical stage of the criminal proceedings against him. He maintains that this is so because the decision he was being asked to make, whether to continue to trial with Collette as his counsel, was "shaped by the need for the assistance of counsel" and that the circuit court's error consisted of it requiring him to make that decision without the aid or advice of counsel.[2] The Commonwealth responds, as it did in the Court of Appeals, that the April 21, 2017 hearing, did not constitute a critical stage of the criminal proceedings. Thus, the Commonwealth contends that the fact that Weatherholt was not represented by counsel at that hearing and Weatherholt was not appointed standby counsel at that time, does not constitute reversible error. We agree.

The Sixth Amendment guarantees defendants facing the possibility of incarceration the right to counsel "at all critical stages of the criminal process." *Marshall v. Rodgers*, 569 U.S. 58, 63 (2013). "While there is no comprehensive and final one-line definition of 'critical stage,' the

---

[2] In addition, Weatherholt again asserts that because Collette was suspended multiple times during and immediately after the criminal proceedings and was ultimately disbarred, he was essentially deprived of the right to counsel throughout the proceedings because Collette was not capable of rendering him effective representation. The Court of Appeals held that this issue was not cognizable on direct appeal. Because Weatherholt did not assign error to this aspect of the Court of Appeal's decision, we need not address the merits of that issue. Moreover, we agree with the Court of Appeals that such matters may only be addressed in a habeas proceeding after the exhaustion of direct appellate remedies. *McGinnis v. Commonwealth*, 296 Va. 489, 495 n.1 (2018).

analysis usually turns on the likelihood of substantial prejudice to defendant's rights during the particular confrontation and the ability of counsel to help avoid that prejudice." *Dir. of Dep't of Corr. v. Kozich*, 290 Va. 502, 512–13 (2015) (citations and internal quotation marks omitted). The inquiry is not whether the defendant *was prejudiced* by the lack of assistance of counsel at a certain point in the proceedings against him, but rather whether the point at which he was denied counsel was a critical stage of those proceedings. Thus, the United States Supreme Court has held that "courts may presume that a defendant has suffered unconstitutional prejudice if he is denied counsel at a critical stage" of the proceedings. *Woods v. Donald*, 575 U.S. 312, 315 (2015) (internal quotation marks omitted). Because there is no dispute that Weatherholt did not have the assistance of counsel at the April 21, 2017 hearing, the issue before us is to determine whether that hearing constituted a critical stage of the criminal proceedings. For the reasons that follow, we conclude that it did not.

Beyond question, an attorney whose license is administratively suspended is not authorized to practice law in the Commonwealth. *Nerri v. Adu-Gyamfi*, 270 Va. 28, 30 (2005). Thus, at the April 21, 2017 hearing, Collette lawfully could not have advised Weatherholt concerning any aspect of the criminal proceedings. Weatherholt contends that he required advice on the sole question upon which the circuit court sought a definitive answer – whether he wished to continue to have Collette as his counsel, with the understanding that if her license were not reinstated at the time of trial, the case would be continued. Such an inquiry does not constitute a critical stage of the criminal proceedings.

It is well established that the right to counsel includes "the right of a defendant . . . to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Indeed, this is generally the first decision a defendant must make when he is taken into custody

and is a decision routinely undertaken without the advice of counsel. In this regard, the circuit court's inquiry at the April 21, 2017 hearing was not effectively different from that made of every unrepresented defendant at arraignment.

The circuit court informed Weatherholt that his counsel was not then able to represent him and inquired whether he wished to continue to have her as his counsel should she be able to resume the practice of law. Weatherholt clearly and explicitly stated that he wished for Collette to continue as his attorney. Although Weatherholt indicated that this was in part because he lacked funds to retain another attorney, he also clearly understood that the court would appoint an attorney to represent him if necessary and that doing so would necessitate a further delay in the proceedings. Nonetheless, Weatherholt was firm in his desire to have Collette continue as his counsel if possible because he "want[ed] to get it over with."

The Commonwealth notes that the temporary unavailability of counsel during the course of criminal proceedings is not an unusual occurrence. Counsel may fall ill, have a family emergency, be stranded because of adverse weather, or be unexpectedly away from one jurisdiction because of the pressing nature of a different matter in another. In such cases, it would not be unusual for the court to inquire of a defendant whether he or she wished to accept the delay occasioned by such occurrence or to seek other counsel. Such a proceeding is held for the benefit of the defendant, who might otherwise not be aware of the potential delay in the proceedings. As such, it is difficult to see how a defendant would be likely to suffer a substantial prejudice to his rights or how the presence of counsel would help to avoid such prejudice.

Likewise, the particular facts of this case do not support the conclusion that the April 21, 2017 hearing constituted a critical stage of the criminal proceedings against Weatherholt. As the record demonstrates, Weatherholt was already aware that Collette had failed to appear at an

8

earlier proceeding that day, necessitating that it be continued. When informed of the reason for her failure to appear and that, unless her license were to be reinstated, the trial scheduled for the following week would likewise be continued, Weatherholt was simply being asked to elect between having Collette remain as his counsel or requesting that new counsel be appointed. While in retrospect it might have been prudent for Weatherholt to have chosen differently, he clearly and unequivocally elected to have Collette continue as his counsel when she became able to do so.

The essence of the April 21, 2017 hearing was to advise Weatherholt of the status of his case and to ascertain what his wishes were with respect to having counsel of his choice. Accordingly, we hold that this inquiry did not require Weatherholt to have the assistance of counsel to formulate his response and, thus, this was not a critical stage of the criminal proceedings that would give rise to a presumption of prejudice as a result of his not having counsel at that time. [3]

CONCLUSION

For these reasons, we will affirm the judgment of the Court of Appeals upholding Weatherholt's convictions.

*Affirmed*.

---

[3] The Court of Appeals held that the issue whether the circuit erred in "failing to advise Mr. Weatherholt as to the nature of his counsel's failure to appear" was not properly before the Court because it was being asserted for the first time in his brief after his petition had been granted. Because we conclude that the April 21, 2017 hearing did not constitute a critical stage of the proceedings, we need not consider whether this subsidiary issue be considered under the ends of justice, Rule 5:25, as any alleged failure on the part of the circuit court to provide Weatherholt with more information on the reasons for Collette's suspension would not have resulted in any reversible error.