PUBLISHED

## *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **23rd** *day of* **August, 2022**.

Stephen James Hood,
                                                                                    Petitioner,

 against                    Record No. 0732-21-2

Commonwealth of Virginia,
                                                                                    Respondent.

Upon a Petition for a Writ of Actual Innocence

Before Judges Humphreys, Causey, and Senior Judge Clements

Stephen James Hood petitioned this Court seeking a writ of actual innocence under Chapter 19.3 of Title 19.2 of the Code of Virginia. In 2002, Hood was convicted in the Circuit Court of the City of Richmond of being an accessory after the fact to abduction and first-degree murder as a principal in the second degree. Hood's convictions, however, were vacated by the circuit court following a successful petition for a writ of habeas corpus based on a claim of ineffective assistance of counsel. Hood nonetheless now petitions this Court for a writ of actual innocence declaring him factually innocent of the crimes underlying his now-vacated 2002 convictions.

Hood's petition therefore raises, as an issue of first impression, whether this Court has the authority to consider a petition for a writ of actual innocence for convictions that have been vacated. For the reasons below, we hold that we do not have subject matter jurisdiction over Hood's petition and accordingly dismiss his petition.

### BACKGROUND

#### Trial, Appeal, and Habeas Proceedings

In the early morning hours of August 31, 1990, Ilouise Cooper was abducted from her apartment on Parkwood Avenue in the city of Richmond. Her body was discovered later that day, and an autopsy

confirmed that she had suffered several fatal stab wounds. In February 1991, a jury convicted Jeffrey Cox of burglary, abduction, and first-degree murder.

The FBI, however, had information that strongly suggested that Cox was innocent of the crime and that Hood participated in Cooper's killing. Following further investigation by the FBI, Hood was indicted in 2001 for first-degree murder and abduction, and Cox's convictions were set aside. As part of plea negotiations, Hood and the government agreed that he would provide a "detailed oral proffer" of the crime and that none of the statements made in the proffer would be used against Hood in the Commonwealth's case-in-chief in a criminal prosecution of Hood. Hood stated that he and another man, Billy Madison, were the perpetrators of the abduction and killing of Cooper in a case of mistaken identity over being cheated in a drug deal. Hood confessed to driving Madison to Cooper's apartment, giving Madison Hood's knives which he used for his job as a cook, and then taking Madison and Cooper to a secluded area where Madison murdered Cooper.

Following a bench trial on April 3 and 4, 2002, the circuit court convicted Hood of abduction as an accessory after the fact (a lesser-included offense of the felony abduction charge) and first-degree murder as a principal in the second degree. At trial, the Commonwealth used Hood's proffer in its case-in-chief in what would later be found to be a violation of the proffer agreement. By final order entered September 13, 2002, the circuit court sentenced Hood to twelve months' incarceration for the misdemeanor accessory conviction and sixty-five years' incarceration for the first-degree murder conviction.

Hood's convictions were affirmed on appeal by this Court and the Supreme Court of Virginia. *Hood v. Commonwealth*, 269 Va. 176 (2005); *Hood v. Commonwealth*, No. 2469-02-2 (Va. Ct. App. Feb. 17, 2004). On March 24, 2006, Hood filed a state habeas corpus petition in the circuit court challenging his convictions on multiple grounds. Hood argued, among other things, that his proffer was false and that his defense attorney and the Commonwealth coerced him to enter the immunity agreement with false promises. He also asserted that the Commonwealth "breached [the] cooperation/immunity agreement" and that his trial

counsel rendered ineffective assistance of counsel by failing to object to the introduction of the proffer as substantive evidence in the Commonwealth's case-in-chief.

On November 10, 2009, the circuit court granted Hood's petition for a writ of habeas corpus on the grounds that trial counsel was ineffective for failing to argue that, under the immunity agreement, the Commonwealth could not introduce the proffer as substantive evidence in its case-in-chief even if Hood introduced contrary evidence. The circuit court set aside the convictions and stated for the record that "the writ vacated the convictions in those two file numbers." Following the Commonwealth's unsuccessful appeal of the circuit court's ruling, the Commonwealth advised the circuit court that it was electing not to retry Hood for first-degree murder. Instead, under a written plea agreement, the Commonwealth moved to amend the original indictment to reflect a charge of attempted abduction, employing the same case number as the original charge. Hood agreed to plead guilty to the amended charge under *Alford* in exchange for an eight-year sentence, which would be satisfied by the time he served during his post-conviction proceedings. The circuit court accepted Hood's plea, and Hood was released from custody.

Hood filed this petition on July 30, 2021, alleging various grounds for his writ. Hood contends that the Commonwealth violated his right to exculpatory evidence and other legal deficiencies in his trial. Hood also points to statements from witnesses at Cox's trial and post-conviction proceedings inconsistent with his guilt. Hood also argues that documents obtained from the FBI via a FOIA request show that there is reason to doubt his guilt. Finally, Hood contends that his knives were not subject to scientific testing that he contends has since been conducted and exonerates him.

ANALYSIS

Subject Matter Jurisdiction

Before any court can proceed to the adjudication of a given case, it must first determine whether it has subject matter jurisdiction over the case. Subject matter jurisdiction "is the authority granted through constitution or statute to adjudicate a class of cases or controversies." *Gray v. Binder*, 294 Va. 268, 275

(2017) (quoting *Morrison v. Bestler*, 239 Va. 166, 169 (1990)).  This Court's jurisdiction over petitions for writs of actual innocence derives from Code § 19.2-327.10:

> Notwithstanding any other provision of law or rule of court, upon a petition of a person who *was convicted of a felony*, or the petition of a person who was adjudicated delinquent by a circuit court of an offense that would be a felony if committed by an adult, the Court of Appeals shall have the authority to issue writs of actual innocence under this chapter.  The writ shall lie to the circuit court that entered the conviction or the adjudication of delinquency and that court shall have the authority to conduct hearings, as provided for in this chapter, on such a petition as directed by order from the Court of Appeals.

(Emphasis added).  Accordingly, the threshold question for whether this Court has subject matter jurisdiction over a petition for a writ of actual innocence is whether a person was "convicted of a felony."  *See Turner v. Commonwealth*, 282 Va. 227, 239 (2011).  To establish subject matter jurisdiction, a petitioner needs to show two things: first, that they were convicted of some crime, and second, that the crime of conviction was a felony.

The Commonwealth argues that for a petitioner to show that he "was convicted of a felony" under Code § 19.2-327.10, he must show that he is subject to a valid, final order of conviction.  Hood contends that the mere historical fact of his prior conviction is enough to bring his case under this Court's original jurisdiction, regardless of the current validity of that conviction.

The law entertains the legal fiction that certain orders or legal acts, though they undeniably took place as a matter of fact, are treated as legal nullities with no effect whatsoever.  This legal fiction has been extended to, among others, void marriages, orders entered when a court lacked personal jurisdiction, and *ultra vires* orders entered by courts.  *Kleinfield v. Veruki*, 7 Va. App. 183, 186 (1988) (bigamous marriage); *McCulley v. Brooks & Co. General Contractors*, 295 Va. 583, 589 (2018) (lack of personal jurisdiction); *Burrelll v. Commonwealth*, 283 Va. 474, 476 (2012) (*ultra vires* order).

When a legal act is void or a legal nullity, courts treat that act as if it had never occurred.  For example, in *Nerri v. Adu-Gyamfi*, 270 Va. 28 (2005), our Supreme Court considered the legal effect of a motion for judgment signed by an attorney whose license to practice law had been administratively

suspended. The Court explained that because the attorney did not have an active license, any filing made during that time was a legal nullity. *See Nerri*, 270 Va. at 31. Accordingly, the motion for judgment was "invalid and had no legal effect." *Id.* The Court extended this reasoning to hold that the nonsuit filed by the plaintiff in the case was similarly without effect because "no valid proceeding was pending which could be non-suited." *Id.*

There is no clear Virginia case law on whether a vacated conviction is a legal nullity. In *Nelson v. Colorado,* 137 S. Ct. 1249 (2017), however, the United States Supreme Court held that, as a matter of constitutional due process law, a vacated conviction should be treated as a legal nullity. The Court held that Colorado statutes violated due process by requiring defendants whose convictions had been reversed or vacated to prove their innocence by clear and convincing evidence in order to obtain the refund of costs, fees, and restitution paid under the invalid conviction. *Nelson*, 137 S. Ct. at 1253. In that case, the defendant was convicted by a Colorado jury of attempting to patronize a prostituted child and attempted third-degree sexual assault by force. *Id.* The trial court imposed an indeterminate prison sentence and ordered him to pay costs, fees, and restitution totaling $4,413.00. *Id.* The Colorado Supreme Court reversed one of his convictions on direct review, and a postconviction court vacated the other. *Id.* The defendant then sought a refund of the amounts paid under the prior conviction and argued that requiring him to prove his innocence violated his rights under the Due Process Clause of the Fourteenth Amendment. *Id.* The Court held that the Due Process Clause required that "once those convictions were erased, the presumption of [the defendant's] innocence was restored." *Id.* at 1255. The Court rebuffed Colorado's argument that the convictions were voidable rather than void, citing with approval the state supreme court dissent that "reversal is reversal," no matter the reason, "[a]nd an invalid conviction is no conviction at all." *Id.* at 1256 n.10 (quoting *People v. Nelson*, 362 P.3d 1070, 1080 (Colo. 2015) (Hood, J., dissenting)).

This understanding that a vacated judgment is a legal nullity has long been applied by the federal courts. For example, in *United States v. Ayres*, 76 U.S. (9 Wall.) 608, 610 (1869), the Court noted that "it is quite clear, that the order granting the new trial has the effect of vacating the former judgment, and to render

-5-

it null and void, and the parties are left in the same situation as if no trial had ever taken place in the cause." *See also Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007); *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996); *Miller v. United States*, 173 F.2d 922, 923-24 (6th Cir. 1949).

We see no reason to depart from this line of reasoning. Although it is a historical fact that Hood was convicted of murder in 2002, the writ of habeas corpus vacated that conviction, and therefore, as a matter of law, Hood's conviction was a legal nullity and "no conviction at all." *Nelson*, 137 S. Ct. at 1256 n.10 (quoting 362 P.3d at 1080)). Virginia law is clear that legal nullities should be treated as though they never occurred. *See Nerri*, 270 Va. at 31. Hood's vacated convictions are legal nullities, and Hood was therefore not "convicted of a felony" under Code § 19.2-327.10. We therefore do not have subject matter jurisdiction to adjudicate Hood's petition for a writ of actual innocence.[1]

## CONCLUSION

Because we lack the subject matter jurisdiction to adjudicate Hood's petition for a writ of actual innocence, we dismiss his petition.

This order shall be published.

A Copy,

Teste:

A. John Vollino, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] We note that this Court lacks jurisdiction over Hood's petition as it relates to his accessory after the fact conviction for a second reason. This Court can only adjudicate petitions for writs of actual innocence where the crime of conviction is a felony. On the date of Hood's conviction, Code § 18.2-19 established that the crime of being an accessory after the fact to abduction was punished as a misdemeanor. As a result, we are also without subject matter jurisdiction to consider Hood's petition as it relates to his accessory after the fact conviction.